**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN JASINSKI,** | : | **Civil No.  1:22-CV-1368** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **KILOLO KIJAKAZI**, | : | |
| **Acting Commissioner of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

**I.**   **Introduction**

This is John Jasinski's second Social Security appeal. Initially Jasinski applied for disability benefits in June of 2015, alleging that medical complications relating to a right foot injury and surgery rendered him wholly disabled. (Tr. 15). Jasinski's first disability application was denied by an Administrative Law Judge (ALJ) in October of 2017, (Tr. 12-23), but this court remanded Jasinski's case to the Commissioner for further consideration of the medical opinion evidence. Jasinski v. Saul, Civil No. 3:18-cv-2113.

On remand, Jasinski raised medical concerns which were similar to his initial application, citing carpel tunnel syndrome and post-operative right foot impairments as his disabling medical impairments.  Moreover, Jasinski's disability application

1

advanced this renewed claim on a medical record which was meager and remained largely unchanged from the record at the time of Jasinski's first disability application. However, in at least one respect the record in this second appeal is significantly less compelling for Jasinski since by the time of this second disability hearing, an additional medical expert, a trained orthopedist, had evaluated Jasinski's medical records and opined that he was not disabled. (Tr. 339-49).

On these facts, the ALJ who presided over Jasinski's second disability hearing concluded that he had not met the stringent standard required to establish disability and denied this claim. (Tr. 316-327). While Jasinski challenges this second decision in the instant case we are reminded of the familiar proposition that we exercise a limited scope of substantive review when considering Social Security appeals. As the Supreme Court has noted:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

> Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v.
> Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999)
> (comparing the substantial-evidence standard to the deferential clearly-
> erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In this case, after a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings that the plaintiff was not disabled. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner.

## II.   **Statement of Facts and of the Case**

The administrative record of John Jasinski's two disability applications, while relatively meager, reveals the following essential facts: Jasinski initially applied for disability on June 8, 2015, alleging an onset of disability beginning in May of 2014. (Tr. 15). Jasinski was born in January of 1965 and was approximately 49 years old at the time of the alleged onset of his disability. (Tr. 20). He had a high school education and prior employment as a roofer foreman.  (Id.)

Jasinski's presenting medical impairments consisted of right foot orthopedic complications. (Tr. 17). Jasinski attributed these impairments to a motorcycle accident which had occurred some 30 years earlier, when the plaintiff was 18 years

old. (Tr. 211). With respect to these impairments, the clinical record was notable in several respects.

First, this medical history is particularly sparse consisting of only approximately 100 pages of treatment records and medical opinions. (Tr. 203-94, 570-87). Further, only a fraction of these medical records consist of actual treatment notes; the balance of the records are comprised of medical opinions. These fragmentary treatment notes are remarkable on several scores. First, although Jasinski attributes his 2014 onset of disability to an accident and injury that occurred thirty years earlier, there are absolutely no medical records describing the nature and extent of this initial triggering injury, or the treatment that Jasinski received for this condition. In fact, Jasinski has submitted no medical records relating to this impairment from the time of the accident, three decades ago, up until 2013.

The clinical records provided by the plaintiff indicated that Jasinski received treatment for right ankle cellulitis at the Ephrata Community Hospital in March of 2013. At that time, x-rays showed no clear evidence of bony involvement; (Tr. 211-12), and Jasinski displayed a full range of motion bilaterally mid feet and toes. (Tr. 214). A right ankle x-ray showed a tiny ossific density inferior to the malleolus that could relate to an old avulsion injury or small ossicle. (Tr. 223). There was no acute

fracture or dislocation, joint spaces were preserved, and no fracture of the base of the metatarsal was seen. (Id.)

Additionally, in April, June, and September of 2013, Jasinski was seen at the Lancaster General Hospital complaining of right ankle pain. (Tr. 233, 238, 248). He was diagnosed as suffering from inflammatory arthritis and gout, was treated and was released. (Id.) Thus, the entire treatment history reflected in the clinical record consists of four medical encounters between March and September of 2013. Notably, there are no apparent treatment records after September 2013. This is significant, since Jasinski alleges an onset of disability beginning in January of 2015, and there are no treatment records which describe his medical condition during this relevant time frame.

Based upon this sparse clinical history, four medical sources initially opined regarding the disabling effect of his right ankle impairment in 2015 and 2016. One of the sources, Dr. Park, was a state agency expert who found that Jasinski retained the ability to do light work. (Tr. 55-62). In addition, Jasinski was evaluated by two consulting sources, Drs. Spencer and Salahub, who proffered varying opinions regarding the extent to which Jasinski's longstanding ankle injury was entirely disabling. (Tr. 258-88). Finally, Dr. Constance Sweet, who met with Jasinski on one occasion in April 2017, claimed that he was disabled as a result in this ankle

impairment. (Tr. 289-94). Presented with this conflicting medical opinion evidence, and a meager clinical record, the ALJ who presided over Jasinski's initial disability application denied this claim on October 20, 2017, finding that the plaintiff could still perform light work notwithstanding his ankle impairment. (Tr. 15-22).

Jasinski appealed this decision and, on March 3, 2020, this court remanded Jasinski's case to the Commissioner for further consideration of the medical opinion evidence. Jasinski v. Saul, Civil No. 3:18-CV-2113. On remand, Jasinski relied upon the prior clinical record to support his disability claim. However, the quantum of medical opinion evidence available to the ALJ was altered significantly.

At Jasinski's second disability hearing, which was conducted on April 15, 2021, Dr. John Kwock appeared and testified as a medical expert. (Tr. 339-49). Dr. Kwock was uniquely well-poised to provide an informed opinion in this case, since the doctor was an orthopedic specialist who had the benefit of the entire administrative record, including all of the prior medical opinions. From that perspective, Dr. Kwock noted the paucity of treatment records, and concluded that Jasinski's existing but fragmentary clinical history indicated that he could perform medium work with some limitations. (Id.)

Following that hearing on April 22, 2021, the ALJ issued a decision denying Jasinski's application for benefits. (Tr. 316-27). In that decision, the ALJ first

6

concluded that Jasinski met the insured requirements of the Act through December 2019 and had not and had not engaged in substantial gainful activity since January of 2015. (Tr. 321). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Jasinski had the following severe impairments: carpal tunnel syndrome and a history of right foot surgery. (Id.) At Step 3, the ALJ determined that none of these conditions met any of the Commissioner's listing criteria. (Tr. 322).

Between Steps 3 and 4 the ALJ then fashioned a residual functional capacity ("RFC") for the plaintiff which considered Jasinski's impairments as reflected in the medical record, and found that:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and including the following: sit 8 hours, 6 hours stand/walk, frequent ramps, stairs, ladders, ropes, scaffolding, frequent bilateral fingering/feeling, and frequent use of right lower extremity.

(Tr. 322).

Specifically, in making the RFC determination, the ALJ considered the extremely limited medical evidence, as well as Jasinski's testimony regarding his impairments. In addition, the ALJ engaged in the following detailed analysis of the medical opinion evidence which assessed Jasinski's sparse clinical treatment records:

Regarding opinion evidence, the undersigned assigns great weight to the opinions of impartial medical expert John Kwock, MD, who specializes in orthopedic surgery. He testified on April 15, 2021. In assigning great weight to these opinions, the undersigned considered that Dr. Kwock specializes in orthopedic surgery, an area of specialization that is relevant to the claimant's allegations. Additionally, he supported his opinions, noting that the claimant has a history of bilateral carpal tunnel surgery. Additionally, he testified that the claimant had foot surgery in the past but the records are limited regarding the nature of the surgery and that there are no x-rays of the foot that described the heel. He testified the available record did not show any operative complications. He testified that there were not past medical records that described what happened to the claimant's heel other than the claimant had skin grafting of the injured heel. He testified that although the consultative examiner noted an antalgic gait, that meant that when the claimant was examined at that point in time, the claimant had an antalgic gait. It is also necessary to have an analysis as to why an individual's gait is antalgic. From what he reviewed in the record, there were no records to substantiate that the claimant had a serious, major, or marked deficiency of his right lower extremity. He testified that there were no x-rays regarding the claimant's spine. He testified that carpal tunnel syndrome could be considered severe, and although the record references a history of foot surgery and some observations have been made regarding the claimant's feet, there are no records regarding or establishing deficits of the right foot.

The undersigned assigns partial weight to the opinions of state agency consultant Dr. Park, who evaluated this case in November 2015. In breaking down Dr. Park's opinions into subparts, the undersigned assigns great weight to Dr. Park's opinions regarding standing and walking. In support of these opinions, he cited to the xrays noted above at Exhibit 1F and he noted the following: the claimant's reported limitations cannot be validated without cohesive and convincing evidence. He noted the consultative examiner report indicated a right foot deformity. He noted the claimant reported he periodically needed crutches but the record elsewhere indicated the claimant could handle personal care without difficulty, the claimant could go on independent outings without assistive devices and there was no indication that the

8

claimant had problems using his right foot while driving and operating gas or break pedals. He also noted the consultative examiner reported a remote history of right lower extremity injury with several surgeries to the right lower extremity. However, the current record did not show any focused care with specialists for any residual issues of functional demise of the claimant's right lower extremity (Exhibit 1A). Regarding Dr. Park's remaining limitations, any of those which differ from those of Dr. Kwock are given limited weight. Dr. Kwock's opinions were provided over 5 years later than those of Dr. Park and due to this, Dr. Kwock has a better longitudinal picture of the case than Dr. Park.

The undersigned assigns limited weight to the opinions of Spencer Long MD from November 2015. His opinions indicate limitations that are far more extensive given the x-ray findings in earlier exhibits or with the x-ray findings at Exhibit 6F/4. Additionally, he noted 4/5 strength in the right leg, which the musculoskeletal listings note as being good strength, active range of motion against gravity, moderate resistance. Despite having good strength of his right lower extremity, Dr. Long determined the claimant could only stand and walk for 30 minutes total in an 8 hour workday. Although he observed some visible deformity of the right lower extremity, he also noted that the claimant had no atrophy of his extremities and as Dr. Kwock testified to, although Dr. Long gave observations of what Dr. Long noted when he met with the claimant, there was nothing in the record to substantiate any serious, major, or marked deficiencies of the claimant's right foot (Exhibit 4F and medical expert testimony).

The opinions of Dr. Salahub from 01/23/16 are given limited weight. Although Dr. Salahub is a podiatrist, xrays of the claimant's foot from January 21, 2016 indicated no evidence of dislocation, the ankle mortiist was intact, there is minimal bony deformity vs. periosteal thickening in the lateral aspect of the mid-great toe metatarsal possibly due to prior trauma, mild medial joint space narrowing of the great toe MTP joint, the remainder of the joint spaces were normal and the claimant's calcaneus (heel bone) appeared normal (Exhibit 5F). All of these findings, especially regarding the claimant's right heel bone appeared normal are significant and do not support the extensive limitations noted by Dr. Salahub at Exhibit 5F. Although there were

some observed findings, such as a limited range of motion when examined, these findings need to be considered in conjunction with the x-ray findings. Additionally, his opinions are inconsistent with the opinions of Dr. Kwock. Moreover, he provided limitations about the claimant's neck and hands, which go beyond the scope of his specialty in podiatry. At the previous hearing, he testified that his attorney recommended Dr. Salahub and the record indicates he met with the claimant on only one occasion.

The undersigned assigns limited weight to the opinions of Constance Sweet MD (Exhibit 7F). She met with the claimant on one occasion, namely April 19, 2017 and her treatment records indicated acute cervicalgia, a history of carpal tunnel syndrome surgery 7 years before April 2017, and the remainder of her report are the claimant's subjective complaints. As such, her treatment records do not support the extreme limitations she noted at Exhibit 8F and her opinions at Exhibit 8F are inconsistent with the impartial medical expert testimony.

(Tr. 323-25).

Having arrived at this RFC assessment, the ALJ found that Jasinski could both perform his past relevant work and could engage on other work which existed in the regional and national economy. (Id.) Based upon these findings the ALJ determined that Jasinski did not meet the stringent standard for disability set by the Act and denied this claim. (Tr. 327).

This appeal followed. (Doc. 1). On appeal, Jasinski argues that ALJ erred in evaluating both his severe and non-severe impairments, and failed to give adequate consideration to those medical opinions which suggested that the plaintiff was

10

disabled. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

**III.** **Discussion**

    **A.**    **Substantial Evidence Review – the Role of this Court**

    When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

    The Supreme Court has recently underscored for us the limited scope of our

review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks
> omitted). It means—and means only—"such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."
> Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v.
> Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999)
> (comparing the substantial-evidence standard to the deferential clearly-
> erroneous standard).

Biestek, 139 S. Ct. at 1154.

    The question before this Court, therefore, is not whether the claimant is

disabled, but rather whether the Commissioner's finding that he is not disabled is

supported by substantial evidence and was reached based upon a correct application

of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.     <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); <u>see also</u> 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42

U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe

15

impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a

physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if

17

it is supported by substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir. 2002); <u>see also Metzger v. Berryhill,</u> No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), <u>report and recommendation adopted sub nom. Metzgar v. Colvin</u>, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); <u>Rathbun v. Berryhill</u>, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), <u>report and recommendation adopted</u>, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory

18

explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id.</u> at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 433 (3d Cir. 1999).

## C.   <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence</u>

The Commissioner's regulations which were in effect at the time of the alleged onset of Jasinski's disability also set standards for the evaluation of medical evidence, and defined medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c).

In deciding what weight to afford competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between

the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally were entitled to more weight. See 20 C.F.R. §404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §§04.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is

consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c).

Thus, while these regulations provided that an ALJ may not unilaterally reject a treating source's opinion, and substitute the judge's own lay judgment for that medical opinion, the ALJ typically may discount such an opinion when it conflicts with other objective tests or examination results. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the treating source's medical opinion, and the doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis.  Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005). Finally, "an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." Tilton v. Colvin, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016).  However, in all instances in social security disability cases the ALJ's decision, including any ALJ judgments on the weight to be given to treating source opinions, must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704.

**D.**     **The ALJ's Decision is Supported by Substantial Evidence.**

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Judged against these deferential standards of review, we find that substantial evidence supported the decision by the ALJ that Jasinski retained the residual functional capacity to perform medium work. Therefore, we will affirm this decision.

In reaching this conclusion, we note that the ALJ's decision comported with the opinion of the medical expert whose judgment the ALJ determined deserved the greatest weight, Dr. Kwock. Substantial evidence supported this assessment of the medical opinion evidence. Dr. Kwock was an orthopedic specialist, and was therefore trained in the specialty most pertinent to Jasinski's disability claim. Further, Dr. Kwock had access to the most complete body of clinical and medical opinion evidence at the time of his April 2021 testimony. In addition, the doctor's

22

opinion rested in large measure on the paucity of clinical proof supporting any greater level of disability. In this regard, the doctor was correct that the medical evidence that existed in the administrative record was particularly meager. Finally, the ALJ's decision shows that, in the absence of any significant body of clinical evidence, the ALJ carefully assessed and evaluated each of the medical opinions, and made detailed findings regarding the weight to be afforded to various aspects of those opinions.

While Jasinski argues on appeal that the ALJ erred in this assessment, at bottom this argument invites us to re-weigh the evidence. This we may not do. See, e.g., Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder'")). Likewise, while Jasinski asserts that the ALJ did not adequately address his severe and non-severe impairments, we disagree. Given the meager medical record presented by the plaintiff, there was little evidence to discuss. Therefore, in our view the ALJ's assessment of this evidence was sufficient given the very limited body of evidence submitted in support of this claim.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the

law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

**IV.**   **<u>Conclusion</u>**

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying these claims will be AFFIRMED.

An appropriate order follows.

<u>*s/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: December 6, 2023

24